## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

JOHN STEPHEN ROUTT,        )
                           )
          Petitioner,     )
                           )
v.                        )     **Case No. 21-CV-0014-CVE-JFJ**
                           )
WILLIS PETTIT, Warden,[1]    )
                           )
          Respondent.    )

### OPINION AND ORDER

Petitioner John Stephen Routt, a state prisoner appearing pro se,[2] brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of Tulsa County, Case No. CF-2016-4467. Dkt. # 1. Respondent Willis Pettit has filed a response (Dkt. # 21) in opposition to the petition, as well as the state-court record (Dkts. # 22, 23), and Routt has submitted a reply (Dkt. # 35). Having considered the parties' arguments and the relevant record, the Court denies the petition.

I.    BACKGROUND

This matter arises from an altercation between Routt and his sister Mary Lewis that occurred in the early morning of August 15, 2016, at Lewis's home. Dkt. # 22-4, at 59, 67, 122. At trial, the State presented evidence that Mary Lewis and her husband Anthony Lewis heard

---

[1] Routt presently is incarcerated at the Mack Alford Correctional Center, in Atoka, Oklahoma. The Court therefore substitutes Mack Alford Correctional Center's current warden, Willis Pettit, in the place of Carrie Bridges, as party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

[2] Because Routt appears without counsel, the Court must liberally construe his pleadings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, is neither required nor permitted to assume the role of Routt's advocate by constructing legal arguments on his behalf or scouring the record for facts to support his claims. Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

someone bang on their door around 5 a.m.  Id. at 67-68, 119-23.  When Mary Lewis asked who was there, the person identified herself as Gina Gibson, Routt's girlfriend.  Id. at 61, 123, 134. Mrs. Lewis opened the door slightly, not realizing that Routt was also behind the door, and Routt forced his way into the home, knocking Gibson to the floor.  Id. at 124-25, 135-37.  Routt held Mrs. Lewis against a wall, held a knife to her throat, and threatened to kidnap her and cause her to be beaten and raped.  Id. at 62, 69-70, 125, 138-39.  Mrs. Lewis testified that Routt also picked up a sledgehammer and threatened to "use it . . . on [them] if [they] tried to do something stupid."  Id. at 126-27; see id. at 72-73 (Anthony Lewis testifying that Routt "[t]hreaten[ed] to smash Mary's head in with [a sledgehammer].").  At some point, Mrs. Lewis called the police and, upon their arrival, identified two backpacks brought into her home by Routt and Gibson that she believed contained drugs.  Id. at 127-30, 137.  A search of one of the backpacks, which was orange, revealed a clear bag of methamphetamine.  Id. at 79-80, 83, 90, 164-65.  Mrs. Lewis could not recall whether Routt or Gibson carried the orange backpack into the apartment, but she testified that Routt carried both backpacks "all the time."  Id. at 130, 137, 157.  Routt testified that the orange backpack belonged to him but denied ownership of the methamphetamine.  Id. at 195, 197.

Routt was convicted by a jury of burglary in the first degree, in violation of OKLA. STAT. tit. 21, § 1431 (Count 2), threatening an act of violence, in violation of OKLA. STAT. tit. 21, § 1378 (Count 4), and possession of a controlled drug, in violation of OKLA. STAT. tit. 63, § 2-402 (Count 5), all after two or more prior felony convictions.  Dkt. # 21-1, at 1-2; Dkt. # 22-8, at 180, 185, 190.[3]  He received terms of imprisonment of forty years for Count 2, six months for Count 4, and forty years for Count 5, with Counts 2 and 5 to be served concurrently and Count 4 to be served consecutively to Count 2.  Dkt. # 21-1, at 2.  Routt directly appealed his judgment and sentence to

---

[3] The Court's citations refer to the CM/ECF header pagination.

the Oklahoma Court of Criminal Appeals (OCCA), raising claims for relief both through appellate counsel and through a pro se supplemental brief.  Dkts. # 21-2, 21-4.  The OCCA denied relief on December 27, 2018.  Dkt. # 21-1.  Routt subsequently filed in state court an application for postconviction relief and an application for a writ of habeas corpus.  Dkts. # 21-6, 21-7, 21-21, 21-22.  The state district court denied both applications, and the OCCA affirmed on appeal.  Dkts. # 21-12, 21-20, 21-26, 21-32.

Routt now seeks federal habeas relief under 28 U.S.C. § 2254, raising twelve claims for relief.  Dkt. # 1, at 5-10, 16-26.  Respondent contends that Routt has failed to demonstrate entitlement to relief under § 2254(d) on Grounds 2, 3, 4, 5, 6, 11, and 12.  Dkt. # 21, at 13-14.  As to the remaining five claims, Grounds 1, 7, 8, 9, and 10, Respondent raises the affirmative defense of procedural default, arguing that the claims are procedurally barred from federal habeas review because they were defaulted in state court on independent and adequate state procedural grounds. Id.

II.    LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).  When a claim has been "adjudicated on the merits in State court proceedings," federal habeas relief may be granted under the AEDPA only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  Dodd v. Trammell, 753 F.3d 971, 982 (10th Cir. 2013) (alteration and internal quotation marks omitted). A state-court decision is "contrary to" clearly established federal law if the conclusion reached by the state court is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Id. (alterations and internal quotation marks omitted).  A state-court decision is an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. (alteration and internal quotation marks omitted).  "[A]n unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Renico, 559 U.S. at 773 (emphases in original) (citations and internal quotation marks omitted).  Rather, "[a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).

III.   DISCUSSION

A. Ground 2: Ineffective Assistance of Trial Counsel

Routt contends that his trial counsel provided constitutionally deficient legal representation.  Claims of ineffective assistance of counsel are analyzed under the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984).  The petitioner must first demonstrate that counsel's performance was deficient, which requires a showing "that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.  The petitioner must then demonstrate that "the deficient performance prejudiced the defense." Id. at 687.  To establish prejudice, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  When, however, a petitioner seeks habeas relief on a claim of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Richter, 562 U.S. at 105.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (citations omitted).

Routt raises five complaints against his trial counsel's performance:  "(A) counsel failed to investigate the case before trial; (B) counsel failed to impeach the state witnesses with their prior inconsistent statements and testimony; (C) counsel failed to call witnesses and present evidence on [his] behalf; (D) counsel's advi[c]e not to call Gina [Gibson] as a witness was ineffective advi[c]e"; and "(E) counsel was ineffective for conceding a[c]knowledgment of the meth[amphetamine]."  Dkt. 1, at 6, 18, 46-56.  Routt additionally argues that the "cumulative errors of counsel" warrant relief.  Id. at 18.  The OCCA reviewed arguments B and C under Strickland

on direct appeal and found that Routt had failed to meet Strickland's prejudice prong.  Dkt. # 21-1, at 15 ("Routt cannot show on the record that, but for counsel's actions, the result of his trial would have been different.").  Because the state appellate court rested its conclusion on lack of prejudice, the Court examines Strickland's prejudice prong under the AEDPA's deferential standard but examines Strickland's performance prong de novo.   See Hooks v. Workman, 689 F.3d 1148, 1188 (10th Cir. 2012) ("[I]n those instances where the OCCA did not address the performance prong of Strickland and we elect to do so, our review is de novo.").

As to arguments A, D, and E, the record appears to reflect that Routt first raised the substance of these arguments in his application for postconviction relief, though arguments A and D appear to be extensions of arguments made on direct appeal.  Compare Dkt. # 21-4, at 8-9, with Dkt. # 21-7, at 15, 16-18.   Respondent argues that the Court "should only review the trial counsel claim as it was raised on direct appeal . . . and decline to review the additional arguments . . . raised during Petitioner's post-conviction proceedings."  Dkt. # 21, at 89 n.27.  It is not entirely clear from the record, however, whether the OCCA considered the arguments on their merits or found them procedurally waived.[4]  In view of the uncertain procedural posture of the arguments and the "straightforward fashion" with which the arguments "may be disposed of . . . on substantive grounds," the court considers the merits of the arguments de novo.  Revilla v. Gibson, 283 F.3d 1203, 1210-11 (10th Cir. 2002).

In his first two arguments, Routt faults his trial counsel for her alleged failure to review the

---

[4] The OCCA appears to have determined that the ineffective-assistance-of-trial-counsel claim was barred under the doctrine of waiver, but it is unclear whether the OCCA also considered the arguments on their merits in the context of Routt's claim of ineffective assistance of appellate counsel.  See Dkt. # 21-20, at 3 (finding all claims procedurally barred except for Routt's claims of actual innocence and ineffective assistance of appellate counsel), 5-6 (finding "no merit in the claim that Petitioner was denied effective assistance of trial or appellate counsel as alleged in his post-conviction application").

preliminary hearing transcript and witness statements to police for inconsistent statements, as well as her resulting failure to impeach the State's witnesses with those statements. Dkt. # 1, at 49, 54. On direct appeal, Routt pointed to a written statement Anthony Lewis provided to police and alleged that it conflicts with Mr. Lewis's preliminary hearing testimony, which was read into the record at trial. Mr. Lewis's written statement describes Routt as "push[ing] his way in[to]" the apartment, while his preliminary hearing testimony refers to "Gina [Gibson] being shoved through the door and [Routt] coming in." Dkt. # 21-4, at 6. The written statement accuses Routt of "threatening all three of [them,] [him]self, Mary, and Gina" with a sledgehammer, while the preliminary hearing testimony clarifies that Routt's "anger was mostly focused just towards the girls." Id. at 6-7. The Court disagrees with Routt's assertion that these statements are inconsistent. Far from conflicting with the written statement, Mr. Lewis's preliminary hearing testimony provides clarity and additional information. Further, Routt was charged with threatening an act of violence against Mary Lewis, not her husband, so Routt's behavior toward Mr. Lewis is immaterial to the determination of guilt. Dkt. # 22-8, at 111-12. The Court concludes that trial counsel's failure to impeach Mr. Lewis's testimony with his prior statements, and counsel's alleged failure to review the preliminary hearing testimony and witness police statements, do not amount to deficient performance under Strickland's first prong, and Routt fails to demonstrate that either alleged deficiency prejudiced the defense.

Routt also asserts that, had counsel properly investigated the case, she would have found that Routt "had a key to the apartment, and that there was a cubby hole to the entrance of the

apartment, where [Routt] could not [have] hid[den]."[5]  Dkt. # 1, at 51.  Even assuming that Routt

had a key to the apartment and that the key is evidence that Routt at one time had consent to enter,

ample evidence was presented at trial to prove that any such consent had been revoked.  See Dkt.

#22-4, at 59, 69, 123-24 (Anthony and Mary Lewis testifying that Routt had lived with them for a

short time but that Anthony Lewis had asked Routt to leave about a week prior to the incident

because Routt had threatened Mary Lewis and had become violent).  Further, Mary Lewis's

testimony at trial was not that Routt hid from view but that he failed to make his presence known

verbally before she opened the door.  Dkt. # 22-4, at 123.  Trial counsel was not deficient for

failing to investigate and gather evidence that would neither weaken the prosecution's case nor

strengthen the defense, and Routt fails to demonstrate that the outcome of his case would have

been different had this investigation taken place.

In arguments C and D, Routt faults his trial counsel for failing to call Gina Gibson as a

witness and for providing poor advice regarding this decision.  Dkt. # 1, at 47-48, 53.  According

to Routt, Gibson would have testified that Routt "did not push her into the apartment, as was stated,

did not threaten [anyone] with the [sledgehammer] and was not the one who possessed the orange

backpack."  Dkt. # 21-4, at 8-9; see Dkt. # 21-7, at 12-16.  "Generally, the decision whether to call

a witness rests within the sound discretion of trial counsel."  Jackson v. Shanks, 143 F.3d 1313,

---

[5] These arguments appear to be unexhausted and subject to an anticipatory procedural bar. See Dkt. # 21-4, at 9 (arguing that trial counsel should have investigated the bag containing the methamphetamine to show that it was a makeup bag belonging to a female); Dkt. # 21-7, at 17 (arguing that trial counsel should have investigated Lewis's apartment for the purpose of proving that the door opens inward and would have hit Mary Lewis's face if Routt had, as alleged, shoved the door open).  Respondent did not raise lack of exhaustion or anticipatory procedural bar as affirmative defenses with respect to the arguments, however, and the Court therefore considers them de novo.  See Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997); Sallahdin v. Gibson, 275 F.3d 1211, 1230 (10th Cir. 2002).

1320 (10th Cir. 1998); see Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Here, Routt was able to communicate his version of events to the jury through his own testimony. Even assuming Gibson had corroborated Routt's testimony, "counsel could have reasonably determined that harmful testimony elicited during [Gibson's] cross-examination would far outweigh the benefit of testimony elicited during direct examination." Jackson, 143 F.3d at 1320. Further, counsel reasonably may have assumed that, given Gibson's romantic relationship with Routt, the jury would question the credibility of her favorable testimony.  Even if counsel's performance was deficient for failing to call Gibson as a witness to elicit corroborating testimony, it is doubtful that the testimony would have prompted the jury to reach a different verdict.

Finally, in argument E, Routt argues that trial counsel's representation was deficient for "conceding [his] acknowledgment of the meth[amphetamine]."  Dkt. # 1, 18, 53.  Routt points to the State's argument on direct appeal: "[T]he only real issue was defendant's knowledge of the methamphetamine, a fact that defense counsel conceded during closing arguments by stating, 'So even if it's [Routt's] backpack, has anyone ever put something in your backpack before?'"  Dkt. # 21-5, at 27; see Dkt. # 1, at 53.  The Court finds no merit in this argument.  Routt's counsel stated, in full: "We talked about the possession of controlled drugs.  The drugs in the backpack.  Were they John's?  John got up on the stand and told you, yeah, backpack is his.  But if you remember there's two backpacks and no one remembered which one Gina had.  So even if it's John's backpack, has anyone ever put something in your backpack before?"  Dkt. # 22-5, at 54.  Reviewed in context, counsel's statement plainly refers to Routt's own admission that he owned the orange backpack, and counsel was providing argument that ownership of a backpack does not necessarily equate to knowledge of its contents.  Because counsel did not concede that Routt had knowledge

9

of the methamphetamine, Routt has not shown deficient performance or prejudice on this basis.

For these reasons, the Court determines that Routt has failed to illustrate that he received ineffective assistance of trial counsel under Strickland.[6]

B.  Ground 3: Sufficiency of the Evidence

Routt was charged and convicted of possession of a controlled substance, in violation of OKLA. STAT. tit. 63, § 2-402.  Dkt. # 22-8, at 185.  Routt contends, as he did before the OCCA, that the State presented insufficient evidence to support the finding that he had constructive possession of the backpack containing methamphetamine.  Dkt. # 1, at 8, 56-59.  When reviewing the sufficiency of the evidence supporting a state criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Oklahoma law, possession of a controlled drug includes the following elements: (1) knowing and intentional, (2) possession, (3) of the controlled dangerous substance.  Okla. Unif. Jury Instr. CR 6-6; OKLA. STAT. tit. 63, § 2-402(A). Possession is the "[a]ctual physical custody, or knowledge of the substance's presence, as well as power and intent to control its use or disposition."  Okla. Unif. Jury Instr. CR 6-16.

On direct appeal, the OCCA rejected Routt's claim of insufficient evidence, holding:

> Routt . . . claims that the evidence presented at trial was insufficient to support his conviction for possession of methamphetamine because the State did not prove each element of the crime beyond a reasonable doubt.  This Court reviews challenges to the sufficiency of the evidence in the light most favorable to the State and will not disturb the verdict if any rational trier of fact could have found the essential elements of the crime charged to exist beyond a reasonable doubt.  Head v. State, 2006 OK CR 44, ¶ 6, 146 P.3d 1141, 1144.  See also Spuehler v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04.  In evaluating the evidence presented at trial,

---

[6] As Routt has failed to demonstrate that his trial counsel acted deficiently or unreasonably in more than one instance, the Court likewise rejects Routt's argument that "the cumulative errors of counsel deprived [him] of the right to effective assistance of counsel."  Dkt. # 1, at 18.

we accept the fact-finder's resolution of conflicting evidence as long as it is within the bounds of reason.  See Day v. State, 2013 OK CR 8, ¶ 13, 303 P.3d 291, 298. This Court also accepts all reasonable inferences and credibility choices that tend to support the verdict.  Coddington v. State, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456.  The methamphetamine was discovered inside a backpack and Routt admitted at trial that he owned the backpack although he denied knowledge of the drugs inside it.  The State proved each element of the crime of possession of methamphetamine beyond a reasonable doubt.  This proposition is without merit.

Dkt. # 21-1, at 6-7.

"A sufficiency-of-the-evidence challenge in a habeas petition presents a mixed question of fact and law," requiring the Court to determine "whether the facts are correct and whether the law was properly applied to the facts."  Hooks, 689 F.3d at 1165 (internal quotation marks omitted). Thus, the Court "appl[ies] both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency of the evidence on habeas."  Id. (quoting Brown v. Sirmons, 515 F.3d 1072, 1089 (10th Cir. 2008)). Under § 2254(d)(1), the Court "ask[s] whether the OCCA correctly identified the governing legal principle from Jackson and reasonably applied it to the facts of [Routt's] case."  Id. at 1167.  Under § 2254(d)(2), the Court asks whether the state court "plainly and materially misstated the record" or whether the petitioner has "show[n] that reasonable minds could not disagree that the finding was in error."  Smith v. Sharp, 935 F.3d 1064, 1072 (10th Cir. 2019) (internal quotation marks omitted).

At trial, Routt testified that the orange backpack belonged to him and that he had a "[d]rug problem" and used drugs to self-medicate his depression.  Dkt. # 22-4, at 186, 195, 197.  Mary Lewis testified that she could not recall whether Routt or Gibson carried the orange backpack inside her apartment but that Routt carried both backpacks "all the time."  Id., at 130.  Lewis further testified that she pointed out both backpacks to the police because she believed they contained drugs, stating, "I know my brother."  Id.  This evidence, viewed in the light most favorable to the prosecution, is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt

11

that Routt constructively possessed the methamphetamine.

Even assuming Gibson carried Routt's backpack inside the apartment, a jury could nonetheless determine that Routt and Gibson were in joint possession of the methamphetamine. See Staples v. State, 528 P.2d 1131, 1133 (Okla. Crim. App. 1974) ("[A] person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control the contraband."). Further, a reasonable factfinder might discredit Routt's testimony that the methamphetamine was not his as self-serving and resolve the conflicting evidence in favor of the prosecution. See Messer v. Robberts, 74 F.3d 1009, 1013 (10th Cir. 1996) ("The Court may not weigh conflicting evidence nor consider the credibility of witnesses," but "must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993))); Jackson, 443 U.S. at 319 (explaining that the Jackson standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

For these reasons, the Court determines that the OCCA's decision was neither an objectively unreasonable application of Jackson nor an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2).

C. Ground 4: Erroneous Jury Instruction

In his fourth claim for relief, Routt contends that he is entitled to habeas relief because his jury was insufficiently instructed on the definition of constructive possession. Dkt. # 1, at 10, 59-

61.  Routt first raised this claim on direct appeal as a violation of his due process rights.[7]  Dkt. #
21-2, at 27-30.  He argued that, while the jury was provided the first portion of the Oklahoma
Uniform Jury Instruction on drug possession, Okla. Unif. Jury Instr. CR 6-11, the jury was not
provided the final two paragraphs of the instruction.  Dkt. # 21-2, at 29-30.  The portion provided
to the jury instructed that the law recognizes both actual possession and constructive possession
and that a person is in constructive possession of a thing if he or she "knowingly has the power
and the intention at a given time to exercise dominion or control over [the] thing."  Dkt. # 22-8, at
148 (citing Okla. Unif. Jury Instr. CR 6-11).  The jury was also instructed that the elements of
knowing and intentional possession must be established beyond a reasonable doubt.  Id. at 147.
The portion of the instruction not provided to the jury included the principle that: "[M]ere
proximity to a substance is insufficient proof of possession.  There must be additional evidence of
the defendant's knowledge and control."  Dkt. # 21-2, at 29 (quoting Okla. Unif. Jury Instr. CR 6-
11).  The OCCA denied Routt's claim.  Dkt. # 21-1, at 7-8.

"A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not
for errors of state law."  Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002).  Thus, the
"appropriate question on habeas review" is not whether the challenged jury instruction was
incorrect under state law, but "'whether the ailing instruction by itself so infected the entire trial
that the resulting conviction violates due process.'"  Hale v. Gibson, 227 F.3d 1298, 1324 (10th

---

[7] Respondent argues that Routt's claim on direct appeal relied solely on state law and that
Routt has therefore not exhausted a constitutional due process claim based on the allegedly faulty
jury instruction.  Dkt. # 21, at 118.  The Court rejects this argument.  Routt expressly invoked the
Fourteenth Amendment's Due Process Clause as the source of the right he contends was violated
and cited case law recognizing the federal constitutional dimension of the issue.  See Dkt. # 21-2,
at 27 (citing Atterberry v. State, 731 P.2d 420, 422 (Okla. Crim. App. 1986)); Bland v. Sirmons,
459 F.3d 999, 1011 (10th Cir. 2006) (explaining that a claim has been exhausted if the petitioner
raised the substance of the federal claim in state court and that the petitioner need not have "cite[d]
'book and verse on the federal constitution.'" (citation omitted)).

Cir. 2000) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  The Court determines that the OCCA's rejection of Routt's claim was neither contrary to nor an unreasonable application of this principle.  The concept that proof of a defendant's knowledge and control over a substance requires more than proof of mere proximity to the substance is inherent in the instruction provided to the jury.  Further, Routt's proximity to the methamphetamine was by no means the only evidence supporting a finding of constructive possession.  The jury also heard Routt's own testimony that the backpack containing the methamphetamine belonged to him, that he had a "[d]rug problem," and that he used drugs to self-medicate his depression.  Dkt. # 22-4, at 186, 195, 197.  Under these circumstances, there is no indication that the instruction on possession so infected Routt's trial as to render it fundamentally unfair.  Accordingly, Routt has not shown entitlement to relief under § 2254(d).

D.  Ground 5: Prosecutorial Misconduct

Routt next argues that prosecutorial misconduct deprived him of his due process right to a fair trial.  Dkt. # 1, at 18-19, 62-63.  In reviewing this claim, the Court considers "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  "Inquiry into the fundamental fairness of a trial requires [courts] to examine the effect of any misconduct within the context of the entire proceedings."  Duckett v. Mullin, 306 F.3d 982, 988 (10th Cir. 2002).  This requires courts to "look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution."  Id. at 988-89 (internal quotation marks omitted).

Routt contends that the State's attorney improperly vouched for Mary Lewis's credibility and cast aspersions on the defense.  Dkt. # 1, at 18, 62-63.  The OCCA considered Routt's claim on direct appeal and denied relief:

> Routt complains prosecutorial misconduct deprived him of his right to a fair trial.  Although defense counsel objected to one of the comments at issue, the others were not met with contemporaneous objection.  The alleged misconduct not objected to at trial is reviewed for plain error only.  Harney v. State, 2011 OK CR 10, ¶ 23, 256 P.3d 1002, 1007.  We review Routt's claim under the analysis set forth in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.  "[W]e evaluate the alleged misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel."  Hanson v. State, 2009 OK CR 13, ¶ 18, 206 P.3d 1020, 1028.  Both sides have wide latitude to discuss the evidence and reasonable inferences therefrom.  See Harmon v. State, 2011 OK CR 6, ¶ 81, 248 P.3d 918, 943.  Relief is only granted where the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair.  Jones v. State, 2011 OK CR 13, ¶ 3, 253 P.3d 997, 998.  It is the rare instance when a prosecutor's misconduct during closing argument will be found so egregiously detrimental to a defendant's right to a fair trial that reversal is required.  See Pryor v. State, 2011 OK CR 18, ¶ 4, 254 P.3d 721, 722.
>
> Routt first complains that the prosecutor impermissibly vouched for the credibility of a State's witness.  In Bench v. State, 2018 OK CR 31, ¶ 90, [431 P.3d 929, 957], this Court held that argument is impermissible vouching only if the jury could reasonably believe that the prosecutor indicated "a personal belief in a witness's credibility, either through explicit personal assurances of the witness's veracity or by implicitly indicating that information not presented to the jury supports the witness's testimony."  The prosecutor's argument was not impermissible vouching.
>
> Next Routt argues that the prosecutor's improper comments cast aspersions on the defense.  Although it is improper for a prosecutor to cast aspersions on opposing counsel or ridicule the defense, the comments in this case cannot be interpreted as doing so.  The gist of the prosecutor's argument was to ask the jury to evaluate the testimony using their common sense.  See Harris v. State, 2000 OK CR 20, ¶ 37, 13 P.3d 489, 499 ("when the argument is merely an attempt to urge the jury to use their common sense and not be swayed by irrelevant or illogical evidence, the comments are proper").  The argument at issue was largely proper and certainly not plain error.

Dkt. # 21-1, at 11-13.

15

Routt has not demonstrated that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).  Routt contends that the prosecution impermissibly vouched for Mary Lewis's credibility during closing arguments with the following remarks:  (1) "Mary has absolutely no reason to lie."; (2) "Mary sat up there and was very honest with you and very emotionally distraught."; (3) "Common sense tells you that [the theory that Mary is making everything up is] just not right.  That's just not what's the truth.  When you go back to that jury room, think hard about what you want to tell Mary.  Tell Mary with your verdict that you believe Mary.  Common sense tells you, you believe her.  You believe Mary because that's what is the truth."  See Dkt. # 1, at 18, 62-63 (quoting Dkt. # 22-5, at 38, 40, 45).

As the OCCA reasoned, "[a]rgument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005) (quoting United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990)).  Here, the prosecutor's remarks do not indicate to the jury that "he knew something more about the witness's credibility than could be deduced from the evidence at trial."  Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005) (declining to find impermissible vouching where prosecutor stated witness had "no reason to lie").  Further, given the strength of the evidence against Routt, there is no indication that the remarks so infected the trial as to render it fundamentally unfair.

Routt also argues that the prosecution improperly "cast aspersions on the defense" during closing arguments when discussing the defense's theory that Routt did not have intent to commit a crime when he entered Lewis's apartment, but rather, was coming to speak with her amicably

16

regarding his belongings.  Dkt. # 1, at 18, 63.  Routt objects to the prosecutor's statements, "Don't be fooled by that smoke and mirrors," and "Don't let the Defense try and fool you."  Id. (quoting Dkt. # 22-5, at 28).  While "[a]ttacks on defense counsel can at times constitute prosecutorial misconduct," the OCCA reasonably determined in this case that the prosecutor's comments did not undermine the fundamental fairness of the trial.  Wilson v. Sirmons, 536 F.3d 1064, 1119 (10th Cir. 2008).  Prosecutors are "afforded considerable latitude in the 'right to reply to an argument raised by [their] opposing advocate.'"  United States v. Brewer, 630 F.2d 795, 803 (10th Cir. 1980) (quoting Sanchez v. Heggie, 531 F.2d 964, 967 (10th Cir. 1976)).  Both Mary Lewis and Anthony Lewis testified that Routt came to the apartment with a knife and that, immediately upon forcing his way in, Routt grabbed Mrs. Lewis and held her against the wall with the knife to her throat. Dkt. # 22-4, at 62, 69-70, 125, 138-39.  Routt testified that he was upset with Mrs. Lewis regarding her disposal of his belongings.  Id. at 188.  Given this evidence and all additional evidence supporting Routt's guilt, it is reasonable to determine that the prosecutor's statements could not plausibly have affected the jury's determination.  See Wilson, 536 F.3d at 1118-19 (finding that asking a prospective juror during voir dire if he would "'let a smoke screen' fool him, implying that it was defense counsel's job to trick the jury," could not have "'seriously affected the jury's deliberations'" "given the overwhelming evidence of guilt").

Accordingly, Routt has not shown entitlement to relief under § 2254(d) based upon the alleged prosecutorial misconduct.

### E.  Ground 6: Improper Sentence Enhancement

Routt next argues that his sentence for possession of methamphetamine was improperly enhanced, violating his Fourteenth Amendment liberty interest.  Dkt. # 1, at 19-20.  Routt first raised this claim in his pro se supplemental brief on direct appeal, arguing that his sentence should

have been enhanced under the specific provisions of Oklahoma's Uniformed Controlled Dangerous Substance Act rather than under the general provisions of Oklahoma's Habitual Offender Act.  Dkt. # 21-4, at 10-11.  In denying relief, the OCCA held:

> Routt complains that the State improperly enhanced his punishment for possession of methamphetamine under the general habitual offender statute instead of under the more specific enhancement provision in the Uniform Controlled Dangerous Substances Act.  Because he failed to object to this at trial we review for plain error under the analysis set forth in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.
>
> Routt was charged with possession of methamphetamine after former conviction of nine felonies; five of the prior convictions were for non-drug related felonies and four were for drug related felonies.  Thus, the State could elect to enhance Routt's sentence for possession of methamphetamine under either the general enhancement provisions of the Habitual Offender Act or under the specifically drug related enhancement provisions of the Uniform Controlled Dangerous Substance Act.  See Novey v. State, 1985 OK CR 142, ¶ 14, 709 P.2d 696, 699. See also Bivens v. State, 2018 OK CR 33, ¶ 15, __ P.3d __, __; Jones v. State, 1990 OK CR 17, ¶ 8, 789 P.2d 245, 247 ("[W]here an appellant is charged with both drug and non-drug predicate offenses, it is permissible to provide for enhancement under either statute").

Dkt. # 21-1, at 17-18 (alteration added).

In support of his argument that his Fourteenth Amendment liberty interest was violated, Routt cites Hicks v. Oklahoma, 447 U.S. 343 (1980).  Dkt. # 21-4, at 11.  In Hicks, the United States Supreme Court held that when "a State has provided for the imposition of criminal punishment in the discretion of the trial jury," the defendant "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion."  Hicks, 447 U.S. at 346; Dickson v. Franklin, 130 F. App'x 259, 264 (10th Cir. 2005) ("In order to benefit from the rule in Hicks, a habeas petitioner must show that the alleged failure to apply state law was 'arbitrary in the constitutional sense.'").[8]

---

[8] The Court cites all unpublished decisions herein as persuasive authority. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

Routt's arguments do not show that the <u>Hicks</u> rule applies to the facts of this case. Regardless, even if the Court liberally construes Routt's sentencing challenge as implicating his Fourteenth Amendment right to due process, Routt fails to demonstrate that his sentence is "illegal" much less unconstitutional.   The OCCA has determined that when, as here, the defendant's predicate offenses are both drug and non-drug offenses, it is "proper to enhance under either statute," and the state need only make an election.   <u>Novey v. State</u>, 709 P.2d 696, 699 (Okla. Crim. App. 1985); <u>see</u> <u>Jones v. State</u>, 789 P.2d 245, 247 (Okla. Crim App. 1990); <u>Hickman v. Spears</u>, 160 F.3d 1269, 1274 (10th Cir. 1998) ("The [OCCA] has already examined the interplay of the . . . relevant statutes," and has "held that when a person has been previously convicted of both drug and non-drug felonies, a court may use either the Habitual Criminal Act or the Uniform Controlled Dangerous Substances Act to enhance the sentence for a new felony drug offense."). On habeas review, this Court is bound by the OCCA's interpretation of state law.   <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1976) (reiterating "that state courts are the ultimate expositors of state law" and that federal habeas courts "are bound by their constructions except in extreme circumstances"); <u>Dennis v. Poppel</u>, 222 F.3d 1245, 1257 (10th Cir. 2000) (explaining that federal habeas courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law").   The OCCA reasonably determined, under the facts of this case, that state law authorized the state to elect which enhancement statute to apply in light of Routt's criminal history.  Because Routt has neither shown that his sentence was unauthorized by state law nor that the application of state law to the facts of his case was arbitrary in the constitutional sense, he is not entitled to habeas relief as to his Ground 6 claim.

F.    Ground 11: Ineffective Assistance of Appellate Counsel

In his claim of ineffective assistance of appellate counsel, Routt argues that counsel "failed to raise obvious and viable issues" on direct appeal and instead raised several meritless claims. Dkt. # 1, at 25, 69-71.  Routt first raised his claim of ineffective assistance of appellate counsel in his application for postconviction relief.  Dkt. # 21-7, at 26-27.  The OCCA considered the claim under the Strickland standard and held that Routt had failed to demonstrate deficient performance or resulting prejudice:

> Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually a petitioner's first opportunity to allege and argue the issue.  As set forth in Logan, 2013 OK CR 2, ¶ 5, 293 P.3d at 973, post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  See Smith v. Robbins, 528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) ("[Petitioner] must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel.").  Under Strickland, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  Strickland, 466 U.S. at 687-89, 104 S.Ct. at 2064-66.  And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).
>
> We find no merit in the claim that Petitioner was denied effective assistance of trial or appellate counsel as alleged in his post-conviction application. The Post-Conviction Procedure Act is not a substitute for a direct appeal, nor is it intended as a means of providing a petitioner with a second direct appeal.  Fowler v. State, 1995 OK CR 29, ¶ 2, 896 P.2d 566, 569; Maines v. State, 1979 OK CR 71, ¶ 4, 597 P.2d 774, 775-76.
>
> Petitioner makes several different claims within the context of his argument that his appellate counsel was ineffective. He argues his appellate counsel inadequately argued otherwise winning claims and that his appellate counsel overlooked several meritorious claims. There is nothing in this case that indicates appellate counsel was ineffective in the claims actually raised in his direct appeal or that had appellate counsel argued any of these omitted issues on appeal it would have changed the

20

result of his appeal. Petitioner's arguments are speculation without evidence and second guessing of his attorney's strategies.  A review of the record makes it clear these claims are without merit.  Petitioner does not establish any deficient performance by appellate counsel in these claims. Strickland, 466 U.S. at 687-89, 104 S.Ct. at 2064-66.

After examining Petitioner's claims of ineffective assistance of appellate counsel, pursuant to the Logan and Strickland standards stated above, Petitioner has failed to establish that appellate counsel's performance was deficient or objectively unreasonable and Petitioner has failed to establish any resulting prejudice.  As a result, Petitioner's ineffective assistance of appellate counsel claims are without merit.

Dkt. # 21-20, at 4-7.

As with Routt's claim of ineffective assistance of trial counsel, Routt's claim against appellate counsel is governed by the two-pronged analysis articulated in Strickland v. Washington. Routt argues that the OCCA "shortened the process of the first prong of Strickland" by failing to "examin[e] the merits of the claims," instead finding that the omission of a meritorious claim, alone, is insufficient to establish ineffective assistance of counsel.  Dkt. # 1, at 69-70.  Citing Milton v. Miller, 744 F.3d 660 (10th Cir. 2014), Routt contends that "[t]his shorten[ed] process used by the Oklahoma Courts has been held contrary to or an unreasonable application of federal law." Dkt. # 1, at 70.  In Milton, the United States Court of Appeals for the Tenth Circuit concluded that "the OCCA truncated Strickland's first prong by stating, 'The fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not sufficient alone to establish ineffective assistance of counsel, or to preclude enforcement of a procedural default.'"  Milton, 744 F.3d at 669.  The Tenth Circuit found that this truncation improperly "enabled the OCCA to reject appellate ineffectiveness allegations without any assessment of the merits of the underlying predicate claims."  Id. (alteration and internal quotation marks omitted).

Unlike the state appellate decision examined in Milton, the OCCA properly stated the standard for Strickland's first prong in its decision denying Routt's application for postconviction

relief, and nothing in the OCCA's analysis suggests that the court applied the truncated standard rejected in Milton. Dkt. # 21-20, at 5 (noting that under the first prong of Strickland, a petitioner must show "deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable"). To the contrary, the OCCA expressly stated that it examined the merits of the multiple omitted arguments forming the basis of Routt's ineffectiveness claim. Id. at 6 (finding the omitted issues were "speculation without evidence and second guessing of [Routt's] attorney's strategies" and that "the record makes it clear these claims are without merit"). Accordingly, Routt has not shown that the OCCA's decision was contrary to, or an unreasonable application of, Strickland on this basis.

Nor was the OCCA's decision otherwise unreasonable. "When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue." United States v. Orange, 447 F.3d 792, 797 (10th Cir. 2006). "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." Id. Routt made multiple arguments in his application for postconviction relief that he claimed were meritorious and improperly omitted by appellate counsel on direct appeal. Dkt. # 21-7, at 26 ("As argued and stated herein, these issues are obvious and viable issues and should have been raised on appeal but counsel chose not to."). The Court considers each in turn.

First, Routt argued that he is "actually innocent" and was convicted on "false evidence" and the "perjured testimony" of Mary and Anthony Lewis. Id. at 3-11. In support, he attached an affidavit provided by Gina Gibson in which Gibson avers that Routt did not force his way into the apartment and did not pick up a sledgehammer or otherwise threaten anyone. Id. at 29. The state courts analyzed the claim as a state claim of actual innocence based on newly discovered evidence, brought pursuant to Oklahoma's Post-Conviction Procedure Act. Dkt. # 21-12, at 8; Dkt. # 21-20,

at 3-4; see OKLA. STAT. tit. 22, § 1080(4) (permitting postconviction relief where "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice"). Both the state district court and the OCCA found the affidavit insufficient to support a showing of actual innocence. Dkt. # 21-12, at 9-10; Dkt. # 21-20, at 3-4. Accordingly, there is no indication the argument would have been successful had appellate counsel raised it on direct appeal.

To the extent Routt intended to raise a constitutional due process claim through his assertion that he was convicted on perjured testimony, the claim likewise is without merit. See Dkt. # 21-7, at 26 (stating that "[w]hen a conviction is obtained by false evidence, and perjured testimony, that conviction violates due process" and citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). "[F]ederal habeas relief cannot be based on perjured testimony unless the government knew that the testimony was false." Farrar v. Raemisch, 924 F.3d 1126, 1132 (10th Cir. 2019). To this end, Routt made only the conclusory statement that, "[t]he amount of inconsistent statements and testimony by the state's witnesses would show that the District Attorney's office help[s] [its] witnesses testify falsely, as this is a practice of the Tulsa County District Attorney's office." Dkt. # 21-7, at 10. This highly speculative assertion fails to carry Routt's burden of establishing that the prosecution knowingly used false testimony. See United States v. Caballero, 277 F.3d 1235, 1244 (10th Cir. 2002) (explaining that the appellant bears the burden of establishing that "(1) [the] testimony was in fact false, (2) the prosecution knew it to be false, and (3) the testimony was material"); Omalza v. State, 911 P.2d 286, 307 (Okla. Crim. App. 1995) (same).

Next, Routt argued he received ineffective assistance of trial counsel because: (A) trial counsel failed to "call[] witnesses or present[] evidence on his behalf"; (B) "counsel failed to investigate the case before trial and failed to render actual assistance"; (C) "counsel failed to

advocate the petitioner's cause and meet the case of the prosecution"; and (D) "counsel conceded knowledge of the methamphetamine without the petitioner's consent."  Dkt. # 21-7, at 12-20.  The Court previously addressed arguments A, B, and D and found them to be without merit.  See supra, section III(A).  As to argument C, Routt largely rehashes his previous arguments.  Dkt. # 21-7, at 18-19.  Nothing in Routt's assertions demonstrates deficient legal representation or resulting prejudice.

Routt then contended that "the Information was insufficient to notify [him] of what to defend against" and "there was an illegal variance and/or constructive amendment of the Information."  Id. at 20-22.  Routt noted that the intent element of the crime of burglary requires "intent to commit some crime" within the dwelling and argued that the Information should have identified the intended crime.  Id. at 20-21.  A charging document "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974); see Russell v. United States, 369 U.S. 749, 763-64 (1962).  Routt's charging document contained the elements of the crime of burglary, and likewise charged Routt with three crimes against Mary Lewis, as well as unlawful possession of a controlled drug, occurring on the same date.  Dkt. # 22-8, at 111-12.  There is no merit to Routt's argument that he had inadequate notice of the charge against which he had to defend.  Nor is there evidence of an illegal variance or constructive amendment to the Information.

Next, Routt argued that the "State's reliance on the kidnapping and assault with a dangerous weapon to prove the intent element of the first degree burglary violates double jeopardy and/or is barred by collateral estoppel."  Dkt. # 21-7, at 22-23.  He asserted, "[W]hen the petitioner

24

was acquitted of the [k]idnapping and assault with a dangerous weapon, the state was not allowed to rely on those charges and the actions associated therein," to prove, for purposes of the burglary charge, that he intended to commit a crime within the dwelling. Id. at 22. "The Double Jeopardy Clause provides constitutional protections against multiple punishments for the same offense." Dennis, 222 F.3d at 1251. "[C]ollateral estoppel prevents a party from relitigating an issue that has already been decided." Smith v. Dinwiddie, 510 F.3d 1180, 1186 (10th Cir. 2007). There is no indication that either doctrine was implicated in this matter. Routt was properly charged with separate offenses, and all charges were decided contemporaneously by the jury.

Routt additionally argued that he did not waive his "fundamental and personal right" to present Gina Gibson as a witness. Dkt. # 21-7, at 23-25. The record belies this assertion. The trial court provided Routt and his attorney the opportunity to discuss whether to present Gibson as a witness, and, following that discussion, Routt and his counsel declined to call her. Dkt. # 22-4, at 198-200 ("I've discussed with my client about calling another witness, Gina Gibson, and at this time we're deciding that we do not want to call Ms. Gibson."). Whether Routt now regrets that decision is not a matter implicating his fundamental rights. Routt also objected that the jury should have been instructed that proximity to a controlled substance does not equate to constructive possession. The Court previously reviewed this claim and found that it was without merit. See supra, section III(C).

For these reasons, the Court determines that the arguments Routt faults his appellate attorney for omitting on direct appeal lack merit. Counsel's failure to raise them therefore was not prejudicial, and Routt cannot show ineffective assistance under Strickland. See Orange, 447 F.3d

at 797.  Accordingly, Routt has not demonstrated that the OCCA's decision was unreasonable under 28 U.S.C. § 2254(d).[9]

### G.  Ground 12: Cumulative Error

In his final ground for relief, Routt submits that the cumulative effect of any errors warrants habeas relief.  Dkt. # 1, at 26-27, 71-72.  "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  United States v. Toles, 297 F.3d 959, 972 (10th Cir. 2002) (internal quotation marks omitted).  The cumulative error analysis, however, applies "only upon a showing of at least two actual errors."  Hanson v. Sherrod, 797 F.3d 810, 852 (10th Cir. 2015).  The OCCA and the state district court considered Routt's argument of cumulative error both on direct review and in the denial of postconviction relief, and the state courts denied relief in both instances on the basis that there were no individual errors.  Dkt. # 21-1, at 16-17; Dkt. # 21-12, at 17.  This Court likewise has determined that Routt has failed to demonstrate error in his conviction or sentence.  Routt's habeas claim of cumulative error therefore is denied.

### H.  Routt's Procedurally Barred Claims: Grounds 1, 7, 8, 9, and 10

Respondent raises the affirmative defense of procedural default, arguing that Grounds 1, 7, 8, 9, and 10 are procedurally barred from federal habeas review because they were defaulted in state court.  Dkt. # 21, at 32-86.  Under the doctrine of procedural default, federal courts are

---

[9] Routt also argued in his application for postconviction relief that the appellate review of his claims did not comport with due process because his appellate counsel "denied the petitioner a copy of [the trial] transcripts."  Dkt. # 21-7, at 27.  Routt did not raise this argument in his habeas petition either as an argument supporting his claim of ineffective assistance of appellate counsel or as a separate due process claim.

precluded from "consider[ing] issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." McCracken v. Gibson, 268 F.3d 970, 976 (10th Cir. 2001) (internal quotation marks omitted). "To be independent, the procedural ground must be based solely on state law." Cole v. Trammell, 755 F.3d 1142, 1159 (10th Cir. 2014) (internal quotation marks omitted). To be adequate, a state procedural ground "must be strictly or regularly followed and applied evenhandedly to all similar claims." Id. (internal quotation marks omitted). Where, as here, the state has pleaded the affirmative defense of a state procedural bar, "the burden to place that defense in issue shifts to the petitioner," who must, at a minimum, provide "specific allegations . . . as to the inadequacy of the state procedure." Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999).

i.      Grounds 7, 8, 9, and 10

Respondent contends, and the record reflects, that Routt first raised Grounds 1 (actual innocence/perjured testimony), 7 (insufficient notice of charge), 8 (illegal variance and/or constructive amendment of Information), and 9 (double jeopardy violation) in his application for postconviction relief and first raised Ground 10 (inadequate reasonable doubt jury instruction) in his state application for a writ of habeas corpus. See Dkt. # 21-17, at 4 (listing claims raised on direct appeal); Dkt. # 21-21, at 2. The OCCA rejected Grounds 7, 8, and 9 as waived under Oklahoma's Uniform Post-Conviction Procedure Act, OKLA. STAT. tit. 22, §§ 1080-89, which precludes defendants from raising in an application for post-conviction relief any claim that could have been raised on direct appeal. Dkt. # 21-20, at 3; Fontenot v. Crow, 4 F.4th 982, 1023 (10th Cir. 2021) ("The OCCA has 'repeatedly stated that Oklahoma's Post-Conviction Procedure Act is not an opportunity to . . . assert claims that could have been raised on direct appeal.'" (quoting

27

Rojem v. State, 925 P.2d 70, 72-73 (Okla. Crim App. 1996)).  The OCCA similarly rejected Ground 10 as barred under the state's procedural rule precluding defendants from raising claims in a state habeas corpus application that could have been raised on direct appeal or in an application for post-conviction relief.  Dkt. # 21-32, at 2; see OKLA. STAT. tit. 22, § 1080(6) ("Excluding a timely appeal, the Post-Conviction Procedure Act encompasses and replaces all common law and statutory methods of challenging a conviction or sentence including, but not limited to, writs of habeas corpus.").

Routt does not challenge the independence or adequacy of Oklahoma's waiver rule, and courts have repeatedly found that the rule meets both standards.  See Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999) ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's . . . claim."); McCracken, 268 F.3d at 976.  Nor does Routt challenge the independence or adequacy of Oklahoma's waiver rule as it applies to state habeas corpus applications.  It is clear that this rule, as codified in § 1080(6), is based solely on state law, and Routt provides no argument suggesting it is not regularly followed and evenhandedly applied.  See Cole, 755 F.3d at 1159.

Because Grounds 7, 8, 9, and 10 were defaulted in state court on independent and adequate state procedural grounds, the Court's review of these claims is foreclosed unless Routt can "demonstrate cause and prejudice or a fundamental miscarriage of justice."  McCracken, 268 F.3d at 976 (internal quotation marks omitted).  Routt alleges ineffective assistance of appellate counsel as cause for the procedural default of these claims.  Dkt. # 1, at 20, 21-22, 23, 24.  However, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

There is no indication that Routt raised a claim of ineffective assistance of appellate counsel in state court regarding counsel's failure to raise Gound 10 on direct appeal, and Routt fails to demonstrate cause and prejudice excusing the procedural default of that claim.  See Dkt. # 21, at 83.  Accordingly, ineffective assistance of appellate counsel cannot serve as cause for the procedural default of Ground 10.  The record does reflect that Routt argued in his application for post-conviction relief that his appellate counsel was ineffective for failing to raise on direct appeal the claims Routt now asserts in Grounds 1, 7, 8, and 9.  Dkt. # 21-7, at 26-27.  As previously discussed, however, Routt's claim of ineffective assistance of appellate counsel lacks merit.  See supra, section III(F).  Thus, it cannot serve as "cause" for the procedural default of Grounds 1, 7, 8, or 9.  Sherrill, 184 F.3d at 1175 ("Because the same legal standards govern petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, we must determine whether petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." (quoting Hickman, 160 F.3d at 1273)).

Finally, Routt has failed to demonstrate a fundamental miscarriage of justice necessitating this Court's review.  The fundamental-miscarriage-of-justice exception permits a prisoner to overcome procedural bars to habeas relief upon a "credible showing of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013).  This equitable exception, however, applies "to a severely confined category."  Id. at 395.  Prisoners asserting actual innocence "must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Fontenot, 4 F.4th at 1030 (internal quotation marks omitted) (quoting House v. Bell, 547 U.S. 518, 537-38 (2006)).  The standard "does not demand conclusive proof of exoneration; rather, it involves a probabilistic determination that, in light of

all the evidence—old and new; admissible and inadmissible—more likely than not any reasonable juror would have reasonable doubt." Id. at 1035 (internal citations and quotation marks omitted) (first quoting Case v. Hatch, 731 F.3d 1015, 1036 (10th Cir. 2013), then quoting House, 547 U.S. at 538)).

In a separate claim for relief (Ground 1), Routt claims that he is actually innocent of the crimes for which he was convicted. In support, he supplied the affidavit of Gina Gibson, as well as three affidavits supplied by Shirley Gibson, an individual with whom he used to live. Dkt. # 1, at 73-76. Gina Gibson's affidavit is merely cumulative of the testimony Routt provided at trial. While it corroborates his testimony, the jury was already presented with the version of events asserted in the affidavit. It is unlikely that the jury's determination would have been swayed by this evidence. Shirley Gibson attests in her three affidavits that Routt never carried an orange backpack while he lived with her and that Routt carried a knife "on a daily basis." Id. at 74-76. This evidence is unpersuasive in light of Routt's own testimony that he owned the orange backpack, and a jury could find constructive possession even if it also determined that Gibson, rather than Routt, carried the backpack into the apartment. See Staples, 528 P.2d at 1133 ("[A] person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control the contraband."). Further, ample evidence of Routt's intent to commit a crime was presented to the jury beyond the fact that he carried a knife to the apartment. Accordingly, Routt has not shown that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. See Fontenot, 4 F.4th at 1030.

ii.    Ground 1

As noted, Respondent additionally raised the affirmative defense of procedural default as to Ground 1.  In Ground 1, Routt contends, as he did in his state application for postconviction relief, that he is "actually innocent and was convicted on perjured testimony," citing in support an affidavit submitted by Gina Gibson.  Dkt. # 1, at 5; see Dkt. # 21-7, at 3-11.  Confusingly, Routt references both actual innocence and the federal Due Process Clause in this ground for relief.  The record appears to reflect that, in reviewing Routt's application for postconviction relief, the state district court construed Ground 1 as a state claim of actual innocence based on newly discovered evidence, brought pursuant to OKLA. STAT. tit. 22, § 1080(4), and denied it on the merits but failed to expressly address Routt's Due Process argument.  See Dkt. # 21-12, at 8; OKLA. STAT. tit. 22, § 1080(4); Farrar, 924 F.3d at 1132.

Respondent asserts that, though the OCCA reviewed Routt's claim of actual innocence on the merits, actual innocence does not constitute a freestanding basis for federal habeas relief.  Dkt. # 21, at 32, 47-48.  The Court agrees that, insofar as Routt is raising a freestanding claim of actual innocence based on new evidence, such a claim cannot, standing alone, entitle a petitioner to habeas relief.  See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").  A state-law claim of actual innocence under OKLA. STAT. tit. 22, § 1080(4) likewise is not cognizable on federal habeas review.

The question remains, however, as to the OCCA's disposition of the constitutional component of Ground 1—whether the state courts overlooked the Due Process argument (misconstruing Routt's argument of perjured testimony as part of a state-law claim of actual

innocence rather than as a federal Due Process claim that the prosecution knowingly used perjured testimony) or whether the courts construed Gound 1 as implicating both a state-law claim of actual innocence and a federal Due Process claim and disposed of the latter as procedurally waived. Respondent argues that the OCCA rejected Routt's claim of "perjured testimony" as procedurally waived because Routt failed to raise the claim on direct appeal, and because the OCCA's order makes the broad finding that "all issues not raised in the direct appeal, that could have been raised, are waived." Dkt. # 21-20, at 1-2, 3; Dkt. # 21, at 33. Indeed, nothing suggests Routt was prevented from raising the claim on direct appeal.

"[I]t is by no means uncommon for a state court to fail to address separately a federal claim that the court has not simply overlooked." Johnson v. Williams, 568 U.S. 289, 300 (2013). Thus, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." Id. at 301. That presumption, however, can be rebutted, "either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court de novo) or by the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)." Id. at 301-02.

Having reviewed the state district court's decision denying postconviction relief and the OCCA's opinion affirming the decision, the Court determines that Respondent has sufficiently rebutted the presumption that the claim was considered on the merits and has shown that the claim instead should be regarded as procedurally defaulted. The OCCA's opinion did not expressly address the Due Process claim on the merits, and there is no reason to think, in this case, that the state court would forgo the clearly applicable state waiver rule in favor of analyzing the claim on the merits. Further, while the state district court's opinion contained contradictory statements on

this point, it did expressly state that the "doctrine of waiver forecloses Petitioner's first seven propositions." Dkt. # 21-12, at 7 ("Petitioner omitted, and therefore waived, his first seven propositions of error."); but see id. at 8 ("Here, the doctrine of waiver bars Petitioner's Second, Third, Fourth, Fifth, Sixth, and Seventh Propositions because they could have been raised on direct appeal, but were not."); see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."); Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" (emphasis added)).

Accordingly, the Court considers the claim to have been barred in state court under Oklahoma's waiver rule. As previously stated, the state waiver rule is both an independent and adequate state procedural ground for barring review, and Routt fails to demonstrate cause for the default and prejudice or a fundamental miscarriage of justice necessitating this Court's review of the claim. See McCracken, 268 F.3d at 976. Thus, the Court finds that the doctrine of procedural default bars federal habeas review of Routt's Ground 1 due process claim.

Given, however, the arguable ambiguity in the state courts' disposition of the claim, the Court finds, in the alternative, that Routt's claim lacks merit. As previously discussed, "federal habeas relief cannot be based on perjured testimony unless the government knew that the testimony was false." Farrar, 924 F.3d at 1132. To this end, Routt provided only the speculative and conclusory assertion that "[t]he amount of inconsistent statements and testimony by the state's witnesses would show that the District Attorney's office help[s] [its] witnesses testify falsely, as

this is a practice of the Tulsa County District Attorney's office." Dkt. # 21-7, at 10.  Due to "the absolute lack of evidence to show either the falsity of [witness] testimony or the prosecutor's knowledge of false testimony," Routt's claim that the prosecution knowingly used perjured testimony fails, both under the AEDPA's deferential standard and under de novo review. Caballero, 277 F.3d at 1244.

IV.   CONCLUSION

Based on the foregoing, the Court denies Routt's petition for a writ of habeas corpus (Dkt. # 1).  Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court concludes that the requisite standards have not been met in this case and therefore declines to issue a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  the Clerk of Court shall note on the record the substitution of Willis Pettit in place of

    Carrie Bridges as party respondent;

2.  the petition for writ of habeas corpus (Dkt. # 1) is **denied**;

3.  a certificate of appealability is **denied**; and

4.  a separate judgment shall be entered in this matter.

**DATED** this 12th day of January, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

35